UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CRISTIAN MAURICIO ALVAREZ-HERNANDEZ,<br><br>Petitioner,<br><br>v.<br><br>BRUCE SCOTT et. al,<br><br>Respondents. | CASE NO. 26-cv-04077-JHC<br><br>ORDER |

## I
## INTRODUCTION

This matter comes before the Court on Cristian Mauricio Alvarez-Hernandez's Petition for Writ of Habeas Corpus. Dkt. 1. The Court has reviewed the materials filed in support of and in opposition to the petition, the rest of the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the petition IN PART.

## II
## DISCUSSION

Federal district courts may grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241 (a), (c). "The [habeas] petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

Here, Petitioner argues that he is entitled to habeas relief because his continued detention under 8 U.S.C. § 1226(c) has become unreasonably prolonged in violation of his right to due process under the Fifth Amendment of the U.S. Constitution.[1] *See generally* Dkt. 1. In determining whether a noncitizen's detention under § 1226(c) has become unreasonably prolonged, courts in this District apply the multi-factor test from *Martinez v. Clark*, 2019 WL 5968089 (W.D. Wash. May 23, 2019) (Report and Recommendation) (applying multi-factor due process analysis), *adopted by*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019).[2] Under this test, courts consider:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.

2019 WL 5968089, at *9. And if the *Martinez* factors weigh in the petitioner's favor, the court will find a due process violation, grant the habeas petition, and order the respondents to provide the petitioner with an individualized bond hearing that comports with procedural due process and the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). *See, e.g.*, *Smbat*, 2026 WL 1842663, at *5; *Odimara*, 2025 WL 1490395, at *11. The Court likewise applies *Martinez*.

---

[1] Petitioner has received a bond hearing, but the Immigration Judge (IJ) determined they did not have jurisdiction due to mandatory detention under 8 U.S.C. § 1226(c) and did not make a finding as to flight risk or dangerousness. *See* Dkt. 10-7 at 2. Petitioner also argues his detention is discretionary under 8 U.S.C. § 1226(a) rather than mandatory detention under § 1226(c). Dkt. 1 at 6. The Court disagrees. As the IJ found, Petitioner is detained pursuant to § 1226(c)(1)(A) as having committed an offense covered under § 1182(a)(2)(B). Dkt. 10-7 at 2.

[2] Petitioner, who is pro se and detained, does not specifically invoke the *Martinez* test. *See generally* Dkt. 1. Still, the Court finds the general invocation of due process and the facts pleaded sufficient, especially where Respondents have correctly applied the *Martinez* test in its response. *See Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013) (holding that "[c]ourts in this circuit have an obligation to give a liberal construction to the filings of pro se litigants, especially when they are civil rights claims by [incarcerated persons]").

1. Length of detention

The length of detention is the "most important factor." *See Martinez*, 2019 WL 5968089, at *9. "Under this factor, the longer mandatory detention continues under 8 U.S.C. § 1226(c) beyond the 'brief' period authorized in *Demore* [*v. Kim*, 538 U.S. 510 (2003)], the harder it becomes to justify without conducting an individualized bond hearing." *Sarr v. Scott*, 765 F. Supp. 3d 1091, 1098 (W.D. Wash. 2025).

Petitioner has been detained since April 4, 2025—nearly 20 months.[3] *See* Dkt. 9 at 3. Respondents concede this is prolonged. Dkt. 8 at 1. And so this factor clearly favors Petitioner. *See, e.g.*, *Martinez*, 2019 WL 5968089, at *9 (finding nearly 13-month detention weighed in favor of granting a bond hearing); *Juarez v. Wolf*, 2021 WL 2323436, at *5 (W.D. Wash. May 5, 2021), *report and recommendation adopted*, 2021 WL 2322823 (W.D. Wash. June 7, 2021) (finding 14-month detention weighed in favor of granting a bond hearing).

2. Likely duration of future detention

The Court next "considers how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including administrative and judicial appeals." *Martinez*, 2019 WL 5968089, at *9.

Although speculative, Petitioner's removal proceedings could take years to resolve. Petitioner currently has a petition for review (PFR) pending before the Ninth Circuit. *See* Dkt. 9 at 4. The PFR was received on October 14, 2026, and his case is likely to continue for many more months if not years. *Id.*; *see Juarez*, 2021 WL 2323436, at *5 (estimating 2 years or more at the outset of a Ninth Circuit appeal). This factor thus favors Petitioner.

[3] Petitioner was transferred to the Northwest ICE Processing Center (NWIPC) on June 1, 2025, and remains detained there. Dkt. 9 at 3.

3. Criminal history

Under the third and fourth factors, the Court reviews the length of civil detention compared to the petitioner's criminal sentence and the nature of the crime. These factors "are suggestive of whether the detainee is a danger to the community or a risk of flight such that a bond hearing would be futile." *Juarez*, 2021 WL 2323436, at *5.

On January 26, 2022, Petitioner pleaded and was sentenced to 121 months on a conspiracy to conduct enterprise affairs through a pattern of racketeering activities charge (18 U.S.C. § 1962(d)) and a concurrent term of 120 months on an alien in possession of ammunition charge (18 U.S.C. § 922(g)(5)(A)). Dkt. 10-2 at 2-3. Although Petitioner was sentenced in 2022, he says his custody began in 2017 and that he served his full sentence. *See* Dkt. 1-1 at 3, 9; Dkt. 11 at 3. The Court assumes Petitioner is referring to credit for time served. *See* 18 U.S.C. § 3585. While Respondents' documents show Petitioner was taken into custody in 2017, the record also indicates that he was remanded at the time of his sentence. *See* Dkt. 10-2 at 2-3; Dkt. 9 at 2. It is unclear from the record if Petitioner was released early or if the U.S. Bureau of Prisons released Petitioner into the custody of Immigration and Customs Enforcement (ICE) before his sentence concluded. *See* Dkt. 9 at 3; 10-3. On this record, it is unclear how long Petitioner's criminal detention lasted, but still, the Court considers that Petitioner received a sentence far longer than the 20 months he has been in civil detention.

As to the nature of his crimes, Respondents summarily state that Petitioner's criminal history means "Congress has inherently deemed [him] a danger to society or a flight risk." Dkt. 8 at 7. The Court need not look to the legislature's intent because the question before the Court is not if Respondents are properly applying § 1226(c)—which the Supreme Court has found constitutional, *see Demore*, 538 U.S. at 518-31—but if, here on these facts, Respondents are violating Petitioner's due process rights. *Martinez*, 2019 WL 5968089, at *6-7 ("all district

courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process'") (collecting cases); *cf. Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

According to Petitioner, the conduct for which he pleaded guilty began when he was 15 years old and ended with his arrest in 2017 when he was 18. Dkt. 11 at 4. He has been detained since, serving out his criminal sentence and nearly an additional 20 months. *Id.* He admits to previous gang membership but says that he left years ago, even taking part in the Bureau of Prisons gang disassociation and debriefing program. *Id.*; Dkt. 11 at 17. He says that while in prison he completed his GED along with other training programs and has a concrete release plan, including living with his U.S. citizen fiancée. Dkt. 11 at 4. Petitioner says that he "does not minimize his convictions" but that those convictions do not show who he is today. *Id.* The Court also does not minimize Petitioner's crimes—Petitioner pleaded guilty to serious offenses and, if he is to be believed, he served the sentence imposed on him for those crimes. On the current record before the Court, due process does not necessarily require his release, but it does impose a "fundamental requirement" to have the opportunity "to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

While both factors weigh in the Government's favor, Petitioner's young age at the time of arrest along with his declaration showing changed circumstances and the lack of clarity on the length of time-served generally support the need for a bond hearing.[4]

---

[4] Given the record before it, *See* Dkts. 9, 10, the Court declines to make a finding on the futility of a bond hearing.

4. Conditions of detention

"The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger [the] argument that [they are] entitled to a bond hearing." *Juarez*, 2021 WL 2323436, at *6.

Petitioner only briefly states that detention at NWIPC "is a secure, locked facility whose conditions resemble criminal confinement." Dkt. # 1-1 at 9 (citing *Mateo Lopez v. Warden, Nw. ICE Processing Ctr.*, 2026 WL 1328548, at *3 (W.D. Wash. May 13, 2026)); *id.* ("Courts in this district have routinely found that this factor favors petitioners detained at NWIPC."). The Court thus finds this factor to lean towards Petitioner.

5. Delays in removal proceedings

Under the sixth and seventh factors, the Court considers "the nature and extent of any delays in the removal proceedings caused by petitioner and the government, respectively." *Martinez*, 2019 WL 5968089, at *10. "Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable." *Juarez*, 2021 WL 2323436, at *6 (quoting *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 963–64 (D. Minn. 2019)).

Neither party has submitted evidence of delays, *see generally* Dkt., and so these factors are neutral.

6. Likelihood of final order of removal

Finally, the Court considers the likelihood that the removal proceedings will result in a final order of removal. *See Martinez*, 2019 WL 5968089, at *10. "[W]here a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Reid v. Donelan*, 819 F.3d 486, 500 (1st Cir. 2016)).

Although Petitioner, who is pro se, briefly presents the arguments he has advanced before the Ninth Circuit, the Court does not have sufficient information to determine the likelihood of success. Dkt. 1 at 5. Respondents take no position on Petitioner's likelihood of final removal. *See* Dkt. 8. On this record, the Court thus cannot determine the likelihood of removal, and so it finds this factor neutral.

7. Weighing the Factors & Remedy

As discussed above, three factors are neutral, two lean towards Respondents, and three of the factors, including the most important factor, weigh in favor of Petitioner. Accordingly, the Court concludes that Petitioner's prolonged detention under § 1226(c) has become unreasonable and therefore violates due process. Petitioner has thus met his burden of proving by a preponderance of the evidence that he "is in custody in violation of the Constitution or laws or treaties of the United States" and is entitled to habeas relief. 28 U.S.C. § 2241(c). The Court will apply the typical habeas relief for a § 1226(c) unreasonable detention claim and order a bond hearing within 14 days of this order that must comport with *Singh v. Holder*, requiring the government to justify Petitioner's continued detention by clear and convincing evidence. *See Mateo Lopez*, 2026 WL 1328548, at *4.

## III
## CONCLUSION

For these reasons, the Court:

(1) GRANTS the habeas petition IN PART (Dkt. 1);

(2) ORDERS Respondents to provide Petitioner with a bond hearing within 14 calendar days of this order. The bond hearing shall comply with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011)—there must be a contemporaneous record of the hearing, and the Government bears the burden of proving by clear and

convincing evidence that Petitioner is a flight risk or danger to the community. Should Respondents fail to provide Petitioner with such a bond hearing within 14 calendar days, Respondents shall release Petitioner within 24 hours under appropriate conditions of release

(3) DIRECTS the Clerk to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 24th day of November, 2026.

John H. Chun
United States District Judge